UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

WELTONIA HARRIS

    Plaintiff,

vs.

U.S. PHYSICAL THERAPY, INC.,

    Defendant.

2:10-cv-01508-JCM -VCF

**REPORT AND RECOMMENDATION FOR PRELIMINARY APPROVAL OF SETTLEMENT (#48)**

## **REPORT & RECOMMENDATION**

  Before the court is plaintiff Weltonia Harris' Motion for Preliminary Approval of Class Action Settlement and Related Orders. (#47 and #48). In plaintiff's motion, she asks this court to take the following steps in the settlement approval process: (1) grant preliminary approval of the settlement agreement, including the settlement relief to the class and the fees and costs payment to plaintiff's counsel; (2) provisionally certify the proposed settlement class and appoint Weltonia Harris as settlement class representative; (3) appoint as class counsel the law firm of Caddell & Chapman; (4) approve the proposed notice plan and the forms of settlement notice and order provision of such notice; and (5) schedule the final fairness hearing and related dates as proposed by the parties. (#48). Defendant U.S. Physical Therapy, Inc, filed a response to plaintiff's motion, stating that it "agrees that the relief sought on [p]laintiff's [motion] is appropriate" and joins in her request. (#52).

  As discussed below, the undersigned Magistrate Judge finds that the settlement is reasonable, fair, and adequate, and recommends granting the relief sought in plaintiff's motion.

**RELEVANT FACTS**

On September 3, 2010, plaintiff filed a class action complaint against defendant for violations of the Fair Credit Reporting Act (hereinafter "FCRA") that occurred when she applied to work for the defendant. (#1). Plaintiff asserts the violations on behalf of herself and on behalf of a national class of individuals for whom defendant obtained consumer reports when they applied for work with defendant. *Id.* Plaintiff alleges that defendant did not follow the FCRA mandates when she and other individuals were not hired based on information contained in FCRA-governed background reports. *Id.* On October 4, 2010, defendant filed its answer, denying most of the claims and asserting twelve affirmative defenses. (#21). Plaintiff asserts that after the defendant filed its answer, plaintiff presented defendant with a draft motion arguing that many of the defenses could be stricken. (#51 Declaration of Craig C. Marchiando). The parties conferred, and defendant agreed to amend its answer to eliminate those defenses which were subject to being stricken. *Id.* With the court's permission, defendant filed an amended answer on October 22, 2010, asserting only three affirmative defenses. (#25).

The parties held a Rule 26(f) conference, and plaintiff informed defendant that she estimated that the proposed class would be around 30 individuals. (#51 Declaration of Craig C. Marchiando). Defendant stated that it wished to obtain information from plaintiff to substantiate this claim, and the parties sought a stay from the court to pursue obtaining such information. *Id;* (#28, #29, #30, #31, #37, and #43). During the stay, the parties reached a tentative settlement, and agreed to exchange information regarding the purported class size. *Id.* On March 12, 2011, defendant provided plaintiff with 1,650 pages of documents, as well as detailed summaries of defendant's FCRA-compliance procedures. *Id.* Plaintiff requested that defendant produce a representative for deposition, and defendant produced Vice President of Administration, Jeffrey Todes. *Id.*

Plaintiff asserts that during Mr. Todes' deposition, plaintiff was able to verify that "the documents provided indeed reflected possible missteps in [defendant's] execution of its policy," and to

establish "the procedure that [defendant] ordinarily trains its employees to follow when it uses FCRA-governed reports to make hiring decision." (#48). Mr. Todes testified as to the process defendant used to determine the class size, "as well as the reason that the alleged FCRA violations here are isolated to those individuals." *Id.* Plaintiff asserts that this discovery process proved helpful "in allowing [c]ounsel for both sides to assess the strengths and weaknesses of the case going forward, and also aided in finally agreeing that the [p]roposed [s]ettlement is fair, reasonable, and adequate under the circumstances." *Id.* On May 31, 2012, plaintiff filed the instant motion for preliminary approval of class settlement and related orders. *Id.* Defendant filed its response on June 14, 2012, asserting that the settlement is fair, reasonable, and adequate, and that the settlement "avoids the need for a contested class certification motion that would be time consuming and costly for all parties." (#52).

The plaintiff provided the court with a copy of the Settlement Agreement. (#51 Exhibit 1). A summary of the terms of the agreed upon settlement, which are subject to court approval, are as follows:

**(1) Settlement Class:** The parties agree that there are 47 settlement class members, and maintain the definition contained in plaintiff's complaint (#1).

**(2) Monetary Relief for Class Members:** After final approval of the settlement, defendant will arrange to send, by First Class Mail, a check for $1,000 to each class members' last-known address, taken from defendant's record. Funds remaining from checks that cannot be delivered to Class Members or have not been cashed within 12 months will be given to charity, through a cy pres proposal approved by the Court.

**(3) Notice of the Class:** Plaintiff's counsel will personally (a) arrange for the mailing of the class notice, (b) respond to class member inquiries regarding the settlement's terms and relief, © communicate the need for updated addresses to defendant, and (d) monitor the processing of payments through plaintiff's counsel's firm trust account. Following preliminary approval of the settlement, plaintiff's counsel will send each class member, by First Class Mail, a summary notice letter outlining

the settlement terms and relief, and directing class members to contact plaintiff's counsel with any concerns about the settlement.

**(4) Settlement Administration:** Since defendant possesses current contact information for each class member in its personnel files, the parties agree that direct mail is the most efficient and appropriate way in which to provide notice to class members. Because the class numbers 47 members, the parties have agreed that plaintiff's counsel should oversee the distribution of the summary notice and settlement payments to class members. Checks will be mailed to the class members after the grant of final approval. The parties state that they do not anticipate the need to incur the expense of hiring a settlement administrator to oversee the process.

**(5) Class Representative Incentive Award:** Class representative Weltonia Harris will be paid an incentive award of $1,500 in recognition of her service and effort on behalf of the class. This incentive award is in addition to the relief to which Harris will be entitled as a member of the settlement class under the terms of the settlement agreement. This award will compensate Harris for the time, effort, and risk she undertook in prosecuting this case against defendant.

**(6) Attorneys' Fees and Costs:** The settlement agreement provides for a payment to class counsel of up to $85,977.50 for reasonable attorneys' fees, plus reasonable and necessary expenses and costs estimated to be no more than $8,608.42. This amount represents plaintiff's counsel's lodestar accumulated in prosecuting this case, and does not include any multiplier or premium over that amount. Defendant does not oppose class counsel's application for attorneys' fees, expenses, and costs up to this amount. Class counsel will submit an application for attorneys' fees with the motion for final approval.

**(7) Release of Claims:** In exchange for the benefits allowed under the settlement, settlement class members who do not opt out will release any and all claims, causes of actions, or liability that: (a) have been or could have been raised in the lawsuit; (b) relate to, arise out of or are in any way connected with the conduct of any released parties in obtaining or using the credit reports of plaintiff and the

members of the proposed class; or (c) relate to any claims of plaintiff and the members of the proposed class under the fair credit reporting act.

**DISCUSSION**

A.  **Approval of Class Settlement**

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2008) (hereinafter "MANUAL").

In order to obtain preliminary approval of a class settlement, plaintiff must also meet the requirements of Federal Rule of Civil Procedure 23. *Murillo v. Pac. Gas & Elec. Co.*, No. 2:08-cv-1974 WBS GGH, 2010 WL 2889728, at *4 (E.D. Cal. July 21, 2010); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). Pursuant to Rule 23(a), the court may grant class status where plaintiff demonstrates that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The action must also meet one of the prerequisites of Rule 23(b) to be maintained as a class action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163 (1974). In this action, plaintiff seeks class certification based on Rule (b)(3), which states that class certification will be granted if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff asks this court to "take the first step in the settlement approval process by granting preliminary approval of the proposed settlement," and to determine whether the agreement is within the "range of reasonableness." (#48). The decision to approve or reject a proposed settlement is committed to the court's sound discretion, but the court must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 940 (9th Cir. 2011); *see City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Hanlon*, 150 F.3d at 1027 (citations omitted).

A formal hearing is not required at the preliminary approval stage, and the court may grant the parties' motion upon an informal request by the settling parties. *See* MANUAL §13.14. The court may conduct any necessary hearing in court or in chambers. *Id.* The parties assert that they do not request a hearing at this preliminary stage. (#48).

   1.   *City of Seattle* **Factors**

At this preliminary approval stage, the court may consider and balance such factors as (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *City of Seattle*, 955 F.2d at 1291.

. . .

### a.   Strength of Plaintiff's Case

Plaintiff asserts that she has a strong case that defendant failed to follow the proper FCRA-notice procedures in choosing not to hire plaintiff, as evidenced by the deposition of Mr. Todes.  (#48). Plaintiff also asserts that there is testimony from Mr. Todes that the defendant likely did not follow the FCRA-notice procedures with the 47 members of the proposed class, as he could not verify that defendant had in fact followed the procedures.  *Id.*  Plaintiff does note, however, that because the class members seek statutory damages, the class must demonstrate willfulness on the part of the defendant. *Id.*  Testimony from Mr. Todes explains that the violations were the result of *one* employee's failure to follow defendant's standard process for giving FCRA notice to applications.  (#51 Exhibit 2 Todes Deposition).  This "cuts against [p]laintiff's position" that defendant was wilful, and plaintiff states that this causes a "real danger" that she will not be able to prove wilfulness and "end up with nothing." (#48).  Plaintiff states that this factor therefore weighs in favor of approval of the settlement.  *Id.*

Defendant disputes plaintiff's claims, and "strongly believes that if it must defend this case to completion, it will ultimately prevail."  (#52).  Defendant also states that "when evaluating whether to settle a class action[,] such as this, there is more to consider than simply a party's potential for success on the merits."  *Id.*  Defendant asserts that it is doubtful that plaintiff could prove wilfulness, but that it recognizes that since the issue of wilfulness "is not one ordinarily subject to summary disposition," it seems desirable for all parties to avoid investing in significant litigation over this issue."  *Id.*

Both parties acknowledge the strengths and weaknesses in plaintiff's and the class members' case. (#48 and #52).  They agree that settlement is most desirable in light of the uncertainty of a jury. *Id.*  The court finds that the parties' positions are reasonable, and it will not address the merits of plaintiff's claims or the likelihood of success of the plaintiff's claims at this stage, as the court should not intrude "upon what is otherwise a private consensual agreement negotiated between the parties."

*See City of Seattle*, 955 F.2d at 1276; *Hanlon*, 150 F.3d at 1027. This factor weighs in favor of granting preliminary approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

### b.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff asserts that there are many "milestones" that remain in this litigation that plaintiff considered when deciding to settle, including "an extensive discovery process to support both class certification and the merits of [p]laintiff's claims, the retention of experts and motion practice surrounding the fitness of their opinions,...other potentially dispositive challenges [defendant] might bring," and any appeals by either side which threaten to prolong the litigation. (#48). Defendant asserts that, "[t]aking into account the uncertainty and risk inherent in any litigation," it has concluded that further "defense of the action would be protracted, risky, burdensome, and expensive." (#52). Defendant also asserts that "[n]o matter how efficiently it is handled, [defendant] would have to spend a substantial amount of money to defend this case to completion," and settling this action would avoid those costs. *Id.* In addition to the normal potential costs, defendant would incur substantial costs if class certification is denied, as class members' claims "would need to be litigated individually in a piecemeal, costly, and time-consuming fashion." *Id.* In light of these considerations, both parties agree that settlement is less risky, expensive, and time-consuming, and more efficient. (#48 and #52).

The court finds that this class action could potentially be very expensive, risky, and lengthy, and that the second factor in *City of Seattle* weighs in favor of granting preliminary approval of the settlement. *See City of Seattle*, 955 F.2d at 1291; *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (listing similar reasons for approving settlement of class action).

### c.  Risk of Maintaining Class Action Status

Plaintiff states that she is confident that she will prevail on her motion to certify class, but that there is "still a very realistic possibility that her motion would fail." (#48). Plaintiff also asserts that she is not yet aware of the possible challenges that defendant would present to class certification, and that

settlement eliminates any risk of having to defend a contested motion to certify class. *Id.* Defendant agrees that "settlement avoids the need for a contested class certification motion that would be time consuming and costly for all partes," and states that if the settlement is not approved, defendant is "free to challenge class certification for any reason." (#52). Defendant asserts that Rule 23's "substantive hurdles stand in the way of non-settlement class certification," but that settlement "eliminates all uncertainty and gives class members a substantial payment without the burden of establishing that the class is certifiable and without proving meritorious claims." *Id.*

The parties agree that there is a risk that the class certification motion could be denied, which would result in numerous individual litigations commencing against the defendant. (#48 and #52). In light of this risk, the court find that this factor weighs in favor of granting preliminary approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

    **d.**    **Amount Offered in Settlement**

Pursuant to the settlement agreement, each class member will receive $1,000 from defendant in exchange for the release of claims. (#51 Exhibit 1). Plaintiff states that the class "includes individuals with difficult to prove claims," and that the settlement offers $1,000 relief to those members despite this "potential shortcoming." (#48). In addition to this, the plaintiff and class members need not take any action to collect the $1,000. *Id.* The $1,000 will simply be mailed to the class members' last known address. *Id.* The $1,000 is "of great value" to the class members, plaintiff states, as the relief comes without regard to actual damages, which most members did not suffer. *Id.* Defendant asserts that the $1,000 is fair, because it provides "direct and automatic monetary relief" in an amount equal to the statutory maximum, without regard to actual damages or merits of members' claims. (#52). Defendant states that class members include individuals "for whom [defendant] may have followed the mandates of the FCRA but for whom [defendant] could not easily and cost-effectively verify such compliance..."

*Id.* Defendant states that in order to verify such compliance, it would have to incur additional expenses, which are eliminated by the settlement. *Id.*

As the parties represent that the $1,000 is the statutory maximum[1], that the members would receive this amount without taking any action, and that the amount is without regard for actual damages or the merits of individual members' claims, the court finds that this amount is reasonable. *See City of Seattle*, 955 F.2d at 1276; *Hanlon*, 150 F.3d at 1027. This factor weighs in favor of granting preliminary approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

### e.     Extent of Discovery Completed and Stage of Proceedings

As stated in the "Relevant Facts" section above, plaintiff obtained more than 1,650 pages of documents confirming class size and deposed Mr. Todes, who confirmed the validity of the documents and provided testimony regarding the compliance with FCRA. (#48). The documents and testimony both yield 47 class members, and plaintiff asserts that further discovery would not result in a higher number. *Id.* Settlement is appropriate for the 47 individuals, plaintiff asserts, and no additional discovery is needed. *Id.* Defendant states that it provided plaintiff with adequate discovery as described by plaintiff, as well as summaries of its FCRA compliance procedures. (#52). Through this discovery, 47 job applicants were identified as potential class members. *Id.* Defendant asserts that settlement of these 47 class members' claims is fair, reasonable, and supported by the discovery conducted by the parties. *Id.*

The court finds that at this stage in the proceedings, the parties have conducted adequate discovery to support their agreement to settle the plaintiff and the class members' claims, and that the decision to do so is reasonable. *See City of Seattle*, 955 F.2d at 1276; *Hanlon*, 150 F.3d at 1027. This factor weighs in favor of granting preliminary approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

. . .

---

[1] The parties dispute whether the $1,000 maximum statutory recovery is per claim or per consumer. (#52).

### f.     Experience and Views of Counsel

Lead plaintiff's counsel is "a nationally recognized class action practitioner who has acted in a lead role in dozens of nationwide class actions involving consumer protection and the FCRA." (#48). Counsel has been an integral part of many settlements of this nature, and, "in his estimation," this settlement is "an excellent result because it provides [c]lass [m]embers with genuine relief as quickly as possible." *Id.* Defense counsel did not submit an affidavit to the court or present in its response a statement regarding counsel's experience and views. (#52). Defense counsel did prepare and sign the response, and stated therein that the proposed settlement terms "are fair, adequate and reasonable, and that the [c]ourt should preliminarily approve the [s]ettlement [a]greement." *Id.*

Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement should is fair, reasonable, and adequate, the court finds that this factor weighs in favor of granting preliminary approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

### g.     Reaction of the Class Members to the Proposed Settlement

The class members have not received notice of the settlement agreement, and will do so once the court preliminarily approves the settlement. (#48). Plaintiff states that plaintiff will address "this aspect of the [s]ettlement at final approval." *Id.*

### 2.     Class Certification

#### a.     Rule 23(a)

For the court to certify a class under Fed. R. Civ. P. 23(a), the court must find that the requirements of numerosity, commonality, typicality, and adequacy of representation are met. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Defendant asserts that the parties have "stipulated, for settlement purposes only, to certification of the class as defined in [p]laintiff's [o]riginal

[c]lass [a]ction [c]omplaint and [m]otion." (#52). In light of this stipulation, the court will only briefly address certification of the class under Rule 23(a).

As stated by the parties, there are 47 class members. (#48 and #52). The court finds that the numerosity requirement is satisfied. *Hanlon*, 150 F.3d at 1019; *See Equal Employment Opportunity Comm'n v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. April 19, 2007) ("[c]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.") (citing *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998)); *see Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (upholding class of 20); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (upholding class of 18).

Plaintiff asserts that commonality is "easily satisfied," as common questions include "(1) whether [defendant] provides applicants or employees with a copy of their consumer report and summary of FCRA rights before taking an adverse action against them; (2) whether [defendant] has a system in place to ensure compliance with these requirements of the FCRA; (3) whether [defendant] willfully adopted that system or willfully violated consumers' FCRA rights; and (4) whether [defendant] is liable for damages, and the amount of those damages." (#48). Upon a review of the allegations in the complaint and the discovery conducted thus far, the court finds that plaintiff has satisfied the commonality requirement. *See Hanlon*, 150 F.3d at 1019; *See Santoro v. Aaron Agency, Inc.*, 252 F.R.D. 675, 680 (D. Nev. 2008) (holding that "one significant issue common to the class may be sufficient to warrant certification."); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 520 (C.D. Cal. 2011).

Plaintiff states that her claims are typical of those of the class, as plaintiff and the class members (1) have "precisely the same claims," (2) must satisfy the same elements of each of the claims, (3) assert claims that are based upon the same course of conduct, and (4) have been injured in the same manner by this conduct. (#48). The court finds that, based on the claims alleged in the complaint (#1) and

plaintiff's assertions in the instant motion (#48), plaintiff has satisfied the typicality requirement. *See Hanlon*, 150 F.3d at 1019; *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (stating that "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct."); *see also Galvan v. KDI Distrib. Inc.*, No. SACV 08–0999–JVS (ANx), 2011 WL 5116585, at *7 (C.D. Cal. Oct. 25, 2011) (finding typicality satisfied where named plaintiff's "claims and potential remedies are the same as the absent class members").

The adequacy of representation requirement is satisfied if: (1) plaintiff is represented by qualified and competent counsel; and (2) plaintiff's interests do not conflict with the interests of the proposed class members. *See Staton*, 327 F.3d at 957; *see also In re Canseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010). As discussed above, plaintiff's counsel has demonstrated to the court that counsel is qualified and competent in litigating complex class action, including consumer and FCRA actions. (#48). Plaintiff states that her claims are "co-extensive with those of" the settlement class, and that there is no conflict between plaintiff's interests and those of the class. *Id.* The court finds that the final requirement of adequate representation is satisfied. *See Hanlon*, 150 F.3d at 1019; *See also Staton*, 327 F.3d at 957; *In re Canseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. at 531.

   **b.**  **Rule 23(b)(3)**

Plaintiff seeks class certification under Rule 23(b)(3), which allows certification of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (#48); Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive*

*Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Certification under Rule 23(b)(3) identifies "those actions in which certification of a class would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Olson*, 2007 WL 2703053 at *5.

As discussed above, plaintiff and the class members present predominately the same common questions of law or fact, including whether defendant wilfully failed to follow the FCRA when it took adverse actions against plaintiff and class members. (#48). Plaintiff asserts that "[p]articularly in the settlement context, class treatment is superior to multiple individual suits or piecemeal litigation of nearly identical claims because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication." *Id* (citing *Nguyen v. Baxter Healthcare Corp.,* 275 F.R.D. 596, 603–04 (C.D. Cal. 2011) (finding superiority requirement met where the common characteristics of the claims and evidence did not present "significant suit management difficulties")). The court finds that Rule 23(b)(3) is satisfied. Fed. R. Civ. P. 23(b)(3).

As all of the requirements of class certification are met and the parties have stipulated to class certification for purposes of the settlement, the court recommends that the court should certify the class. Fed. R. Civ. P. 23(a) and (b)(3).

### 3. Proposed Notice Program

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL § 21.312. Plaintiff attached the proposed form of notice of the settlement to the settlement agreement. (#51-2 Exhibit A). Upon a review of this notice, the court finds that the notice complies with the requirements outlined in

section 21.312 of the MANUAL, and is practicable notice under these circumstances. The court should order notice be distributed in accordance with the terms of the settlement agreement.

### 4. Scheduling Final Approval Hearing

As this court finds that preliminary approval of the class settlement agreement is warranted, this court recommends that a final approval hearing be scheduled before the assigned district judge. This "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented," should be scheduled for a date that would provide class members enough advance notice to be able to attend if they desire. MANUAL § 21.632

### RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that plaintiff Weltonia Harris' Motion for Preliminary Approval of Class Action Settlement and Related Orders (#47) be GRANTED.

IT IS FURTHER RECOMMENDED that the court (1) grant preliminary approval of the settlement agreement, including all payment to the class and the fees and costs of class counsel, (2) certify the proposed class and appoint plaintiff Harris as class representative, (3) appoint as class counsel the law firm of Caddell & Chapman, (4) approve the proposed notice plan and the form of the settlement notice, and order distribution of the notice as outlined in the settlement agreement, and (5) schedule the final fairness hearing for a date that would provide class members enough advance notice to be able to attend if they desire.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file

objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 18th day of July, 2012.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE