# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### ***

| | |
|---|---|
| WELTONIA HARRIS | 2:10-cv-01508-JCM -VCF |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION FOR** |
| U.S. PHYSICAL THERAPY, INC., *et al.,* | **FINAL APPROVAL OF SETTLEMENT (#61)** |
| Defendants. | |

## REPORT & RECOMMENDATION

Before the court is plaintiff Weltonia Harris' Motion for Final Approval of Class Action Settlement and Related Orders. (#61). No Opposition was filed. The court held a final fairness hearing on December 7, 2012. (#62).

Plaintiff asks this court to take the following steps in the settlement approval process: (1) finally approve the settlement agreement, including the settlement relief to the class and the fees and costs payment to plaintiff's counsel; (2) finally certify the proposed settlement class and appoint Weltonia Harris as settlement class representative; (3) appoint as class counsel the law firm of Caddell & Chapman; (4) overrule any class member objections; and (5) dismiss with prejudice all claims against defendants on behalf of any class members who have not excluded themselves from the settlement. (#61-1).

As discussed below, the undersigned Magistrate Judge finds that the settlement is reasonable, fair, and adequate, and recommends granting the relief sought in plaintiff's motion.

**RELEVANT FACTS**

On September 3, 2010, plaintiff filed a class action complaint against defendant for violations of the Fair Credit Reporting Act (hereinafter "FCRA") that occurred when she applied to work for the defendant. (#1). Plaintiff asserts the violations on behalf of herself and on behalf of a national class of individuals for whom defendant obtained consumer reports when they applied for work with defendant. *Id.* Plaintiff alleges that defendant did not follow the FCRA mandates when she and other individuals were not hired based on information contained in FCRA-governed background reports. *Id.* On October 4, 2010, defendant filed its answer, denying most of the claims and asserting twelve affirmative defenses. (#21). Plaintiff asserts that after the defendant filed its answer, plaintiff presented defendant with a draft motion arguing that many of the defenses could be stricken. (#51 Declaration of Craig C. Marchiando). The parties conferred, and defendant agreed to amend its answer to eliminate those defenses which were subject to being stricken. *Id.* With the court's permission, defendant filed an amended answer on October 22, 2010, asserting only three affirmative defenses. (#25).

The parties held a Rule 26(f) conference, and plaintiff informed defendant that she estimated that the proposed class would be around 30 individuals. (#51 Declaration of Craig C. Marchiando). Defendant stated that it wished to obtain information from plaintiff to substantiate this claim, and the parties sought a stay from the court to pursue obtaining such information. *Id;* (#28, #29, #30, #31, #37, and #43). During the stay, the parties reached a tentative settlement, and agreed to exchange information regarding the purported class size. *Id.* On March 12, 2011, defendant provided plaintiff with 1,650 pages of documents, as well as detailed summaries of defendant's FCRA-compliance procedures. *Id.* Plaintiff requested that defendant produce a representative for deposition, and defendant produced Vice President of Administration, Jeffrey Todes. *Id.*

Plaintiff asserts that during Mr. Todes' deposition, plaintiff was able to verify that "the documents provided indeed reflected possible missteps in [defendant's] execution of its policy," and to

establish "the procedure that [defendant] ordinarily trains its employees to follow when it uses FCRA-governed reports to make hiring decision." (#48).  Mr. Todes testified as to the process defendant used to determine the class size, "as well as the reason that the alleged FCRA violations here are isolated to those individuals." *Id.*  Plaintiff asserts that this discovery process proved helpful "in allowing [c]ounsel for both sides to assess the strengths and weaknesses of the case going forward, and also aided in finally agreeing that the [p]roposed [s]ettlement is fair, reasonable, and adequate under the circumstances." *Id.*

On May 31, 2012, plaintiff filed a motion for preliminary approval of class settlement and related orders. (#47).  Defendant filed its response on June 14, 2012, asserting that the settlement was fair, reasonable, and adequate, and that the settlement "avoids the need for a contested class certification motion that would be time consuming and costly for all parties." (#52).  On July 18, 2012, the undersigned issued a Report and Recommendation for Preliminary Approval of Settlement (hereinafter "R&R"). (#53).  The court summarized the terms of the Settlement Agreement (#51 Exhibit 1) provided by plaintiff as follows:

(1) **Settlement Class:** The parties agree that there are 47 settlement class members, and maintain the definition contained in plaintiff's complaint (#1).

(2) **Monetary Relief for Class Members:** After final approval of the settlement, defendant will arrange to send, by First Class Mail, a check for $1,000 to each class members' last-known address, taken from defendant's record.  Funds remaining from checks that cannot be delivered to Class Members or have not been cashed within 12 months will be given to charity, through a cy pres proposal approved by the Court.

(3) **Notice of the Class:** Plaintiff's counsel will personally (a) arrange for the mailing of the class notice, (b) respond to class member inquiries regarding the settlement's terms and relief, © communicate the need for updated addresses to defendant, and (d) monitor the processing of payments through plaintiff's counsel's firm trust account.  Following preliminary approval of the settlement,

plaintiff's counsel will send each class member, by First Class Mail, a summary notice letter outlining the settlement terms and relief, and directing class members to contact plaintiff's counsel with any concerns about the settlement.

**(4) Settlement Administration:** Since defendant possesses current contact information for each class member in its personnel files, the parties agree that direct mail is the most efficient and appropriate way in which to provide notice to class members. Because the class numbers 47 members, the parties have agreed that plaintiff's counsel should oversee the distribution of the summary notice and settlement payments to class members. Checks will be mailed to the class members after the grant of final approval. The parties state that they do not anticipate the need to incur the expense of hiring a settlement administrator to oversee the process.

**(5) Class Representative Incentive Award:** Class representative Weltonia Harris will be paid an incentive award of $1,500 in recognition of her service and effort on behalf of the class. This incentive award is in addition to the relief to which Harris will be entitled as a member of the settlement class under the terms of the settlement agreement. This award will compensate Harris for the time, effort, and risk she undertook in prosecuting this case against defendant.

**(6) Attorneys' Fees and Costs:** The settlement agreement provides for a payment to class counsel of up to $85,977.50 for reasonable attorneys' fees, plus reasonable and necessary expenses and costs estimated to be no more than $8,608.42. This amount represents plaintiff's counsel's lodestar accumulated in prosecuting this case, and does not include any multiplier or premium over that amount. Defendant does not oppose class counsel's application for attorneys' fees, expenses, and costs up to this amount. Class counsel will submit an application for attorneys' fees with the motion for final approval.

**(7) Release of Claims:** In exchange for the benefits allowed under the settlement, settlement class members who do not opt out will release any and all claims, causes of actions, or liability that: (a) have been or could have been raised in the lawsuit; (b) relate to, arise out of or are in any way connected

with the conduct of any released parties in obtaining or using the credit reports of plaintiff and the members of the proposed class; or © relate to any claims of plaintiff and the members of the proposed class under the fair credit reporting act.  (#53).

The court considered the *City of Seattle* factors in determining whether the settlement was "the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id* (quoting *In re Bluetooth Headset Prods. Liability Litig*, 654 F.3d 935, 940 (9th Cir. 2011).  The court determined that the following factors weighed in favor of preliminarily approving the settlement (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel; and.  (#53).  With regard to the final *City of Seattle* factor, the reaction of the class members to the proposed settlement, the court held that since this is the preliminary stage and the class members have not been provided with notice of the settlement, the court will address this factor at the final approval stage.  *Id.*

As part of the preliminary approval stage, the court recommended certification of the class under Federal Rule of Civil Procedure 23(a), and found that (1) the proposed 47 class members met the numerosity requirement, (2) the "commonality is "easily satisfied,"" (3) plaintiff Harris' claims are typical of those of the class, and (4) the adequacy of representation is satisfied by plaintiff and her counsel.  *Id.*   The court also found that class certification was appropriate under Rule 23(b)(3).  *Id.*  Pursuant to the MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2008) (hereinafter "MANUAL"), the court analyzed the proposed notice program submitted by the plaintiff (#51-2 Exhibit A).  *Id.*  The court found that the notice complied with the requirements in § 21.312, and recommended the court to order notice to be distributed in accordance with the terms of the settlement agreement.  *Id.*  As the court found that preliminary approval of the class settlement agreement was warranted, the court

recommended the District Judge hold a final approval hearing "at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented," and schedule the hearing "for a date that would provide class members enough advance notice to be able to attend if they desire." *Id.*

On August 9, 2012, the District Judge issued an order adopting the R&R (#53) and granting the motion for preliminary approval of class action settlement and related orders (#47 and #48), thereby (1) preliminarily approving the settlement agreement (#51-1 Exhibit 1), including settlement relief to the class members of $1,000, an incentive award to plaintiff Harris of $1,500, and a fee payment to plaintiff's counsel of $85,977.50, plus reasonable and necessary expenses and costs estimated to be no more than $8,608.42, (2) certifying the proposed class of 47 members and appointing plaintiff Harris as settlement class representative, (3) appointing the law firm of Caddell & Chapman as class counsel, and (4) approving the proposed notice plan (#51-1 Exhibit 1 Section (3)) and the proposed form of settlement notice (#51-2 Exhibit A). (#54). The District Judge also remanded the final fairness hearing and the scheduling therefor to the undersigned Magistrate Judge. *Id.*

On September 12, 2012, the undersigned issued a minute order scheduling a telephonic conference for September 18, 2012. (#55). During the telephonic conference held on September 18, 2012, the parties discussed the timing of dissemination of the notices of settlement and the date of the final fairness hearing, and the court permitted plaintiff to file an amended complaint to add defendant U.S. PT Management, Ltd. (#56). The court issued an order on the same day, ordering the manner in which the notice must be distributed to the class members and scheduling the final fairness hearing for December 7, 2012, at 1:30 p.m. (#57).

On September 19, 2012, plaintiff filed her amended complaint adding U.S. PT Management, Ltd as a defendant. (#58). On November 27, 2012, plaintiff filed an unopposed motion for telephonic appearance at the final fairness hearing (#59), which the court approved on November 30, 2012. (#60).

On December 5, 2012, the plaintiff filed the instant motion for final approval of class action settlement and related orders.  (#61).  The court held the final fairness hearing on December 7, 2012.  (#62).

## DISCUSSION

### A.    Approval of Class Settlement

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. MANUAL § 21.632.

### 1.    Preliminary Approval

As discussed above, the undersigned recommended preliminary approval of the class settlement (#53) and the District Judge adopted the recommendation in its entirety, (1) granting preliminary approval of the settlement agreement (#51-1 Exhibit 1), including settlement relief to the class members of $1,000, an incentive award to plaintiff Harris of $1,500, and a fee payment to plaintiff's counsel of $85,977.50, plus reasonable and necessary expenses and costs estimated to be no more than $8,608.42 1, (2) certifying the proposed class of 47 members and appointing plaintiff Harris as settlement class representative, (3) appointing the law firm of Caddell & Chapman as class counsel, and (4) approving the proposed notice plan (#51-1 Exhibit 1 Section (3)) and the proposed form of settlement notice (#51-2 Exhibit A) (#54).  The first step of preliminary approval is satisfied.  *See* MANUAL §13.14 (stating that a formal hearing is not required at the preliminary approval stage, and the court may grant the parties' motion upon an informal request by the settling parties).

. . .

. . .

### 2.    Dissemination of Notices

In accordance with Rule 23(e)(1)(B), step two requires "the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL §§ 21.312 and 21.632. Rule 23(e)(1)(B) requires notice in a reasonable manner to "all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *Id.* "[I]ndividual notice is required, where practicable, in Rule 23(b)(3) actions." *Id.* "In an order preliminarily approving the settlement under Rule 23(e), the judge sets the date for providing notice of the proposed settlement. This order, as well as the notice, should establish the time and place of a public hearing on the proposed settlement and specify the procedure and timetable for opting out, filing objections, and appearing at the settlement hearing." *Id.*

The "notice should announce the terms of a proposed settlement and state that, if approved, it will bind all class members. If the class has been certified only for settlement purposes, that fact should be disclosed. Even though a settlement is proposed, the notice should outline the original claims, relief sought, and defenses so class members can make an informed decision about whether to opt out." *Id.* Plaintiff attached the proposed form of notice of the settlement to the settlement agreement, which complies with the requirements outlined above. (#51-2 Exhibit A). The proposed form of notice was approved by the District Judge. (#54)  The undersigned ordered that notice of the class settlement be distributed as follows:

(1) On or before September 21, 2012, defense counsel must provide the law firm of Caddell & Chapman with updated contact information from its personnel files for each of the 47 class members.

(2) On or before September 26, 2012, the law firm of Caddell & Chapman must send each class member, by First Class Certified Mail, the court approved notice of the settlement (#51-2

Exhibit A) providing the time and place of the final fairness hearing and providing for an objection date of October 15, 2012, and an opt-out and intention to appear date of November 7, 2012.

(3) On or before November 15, 2012, the law firm of Caddell & Chapman must respond to any class member objections or inquiries regarding the settlement, the terms thereof, and/or the final fairness hearing.  (#57).

Plaintiff asserts in the instant motion for final approval of the class settlement that following the remand of the final fairness hearing to the undersigned, defense counsel provided plaintiff's counsel with updated contact information for class members taken from its personal files.  (#61-1 Exhibit 1). Plaintiff's counsel mailed letters, by First Class Certified Mail, to the 47 class members on September 26, 2012.  *Id.*  For any letters that were returned undeliverable, plaintiff's counsel requested that defense counsel update the addresses.  *Id.*  Certified letters were sent a second time to those individuals.  *Id.*  If the letters were returned undeliverable again, plaintiff's counsel mailed a third letter using regular, uncertified mail, "on the off chance that some certified letters did not reach [c]lass [m]embers because of their refusal to sign for or make a trip to the post office to obtain them."  *Id.*  Plaintiff asserts that eight letters remain undeliverable.  *Id.*

The notice letters contained the toll-free number for plaintiff's counsel's law firm, and counsel spoke with two class members and answered their questions about the settlement.  *Id.*  Plaintiff states that other than the eight undeliverable letters, there were no issues related to the administration of the settlement.  *Id.*

The court finds that notice was provided to the class members in accordance with MANUAL §§ 21.312 and 21.632 and Fed. R. Civ. P. 23(e)(1)(B), as the each individual class members received "direct notice in a reasonable manner" which set forth the terms of the proposed settlement, the date and

time of the final fairness hearing, and the procedure and time frame to opt out, file objections, and/or appear at the hearing.  (#61-1); MANUAL §§ 21.312 and 21.632; Fed. R. Civ. P. 23(e)(1)(B).

**3.      Final Fairness Hearing**

The last step requires the court to conduct a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. MANUAL § 21.632.  The court held the final fairness hearing in this action on December 7, 2012. (#62).  No class members appeared at the hearing.  *Id.*

In accordance with § 21.635 of the MANUAL, upon considering the fact that no class members objected and the "diverse interests and the requisite factors [of] the settlement's fairness, reasonableness, and adequacy," the court finds that the proposed class settlement should be approved.   Before making such a determination, the court must find that there is a sufficient record as to the basis and justification of the settlement.  MANUAL § 21.635 (stating that "[e]ven if there are no or few objections or adverse appearances before or at the fairness hearing, the judge must ensure that there is a sufficient record as to the basis and justification for the settlement.").  The court must also make "specific findings as to how the settlement meets or fails to meet the statutory requirements" under Fed. R. Civ. P. 23.  *Id.*

**a.      Sufficient Basis and Justification for Settlement**

The court's ultimate determination that the settlement is "fair, reasonable, and adequate" involves a balancing of the *City of Seattle* factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement.  *City of Seattle*, 955 F.2d at 1291.

### i.      Strength of Plaintiff's Case

Plaintiff asserts that she has a strong case that defendant failed to follow the proper FCRA-notice procedures in choosing not to hire plaintiff, as evidenced by the deposition of Mr. Todes.   (#61-1). Plaintiff also asserts that there is testimony from Mr. Todes that the defendant likely did not follow the FCRA-notice procedures with the 47 members of the proposed class, as he could not verify that defendant had in fact followed the procedures.   *Id.*   Plaintiff does note, however, that because the class members seek statutory damages, the class must demonstrate willfulness on the part of the defendant. *Id.*   Testimony from Mr. Todes explains that the violations were the result of *one* employee's failure to follow defendant's standard process for giving FCRA notice to applications.   (#51 Exhibit 2 Todes Deposition).   This "cuts against [p]laintiff's position" that defendant was wilful, and plaintiff states that this causes a "real danger" that she will not be able to prove wilfulness and "end up with nothing." (#61-1).   Plaintiff states that this factor therefore weighs in favor of approval of the settlement.   *Id.*

Defendant disputes plaintiff's claims, and "strongly believes that if it must defend this case to completion, it will ultimately prevail."   (#52).   Defendant also states that "when evaluating whether to settle a class action[,] such as this, there is more to consider than simply a party's potential for success on the merits."   *Id.*   Defendant asserts that it is doubtful that plaintiff could prove wilfulness, but that it recognizes that since the issue of wilfulness "is not one ordinarily subject to summary disposition," it seems desirable for all parties to avoid investing in significant litigation over this issue."   *Id.*

Both parties acknowledge the strengths and weaknesses in plaintiff's and the class members' case.   (#52 and #61-1).   They agree that settlement is most desirable in light of the uncertainty of a jury. *Id.*   The court finds that the parties' positions are reasonable, and it will not address the merits of plaintiff's claims or the likelihood of success of the plaintiff's claims at this stage, as the court should not intrude "upon what is otherwise a private consensual agreement negotiated between the parties" and "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the

merits of the dispute." *See City of Seattle*, 955 F.2d at 1276; *Hanlon*, 150 F.3d at 1027. This factor weighs in favor of granting final approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

          **ii.**        **Risk, Expense, Complexity, and Likely Duration of Further Litigation**

      Plaintiff asserts that there are many "milestones" that remain in this litigation that plaintiff considered when deciding to settle, including "an extensive discovery process to support both class certification and the merits of [p]laintiff's claims, the retention of experts and motion practice surrounding the fitness of their opinions,...other potentially dispositive challenges [defendant] might bring," and any appeals by either side which threaten to prolong the litigation. (#61-1). Defendant asserts that, "[t]aking into account the uncertainty and risk inherent in any litigation," it has concluded that further "defense of the action would be protracted, risky, burdensome, and expensive." (#52). Defendant also asserts that "[n]o matter how efficiently it is handled, [defendant] would have to spend a substantial amount of money to defend this case to completion," and settling this action would avoid those costs. *Id.* In addition to the normal potential costs, defendant would incur substantial costs if class certification is denied, as class members' claims "would need to be litigated individually in a piecemeal, costly, and time-consuming fashion." *Id.* In light of these considerations, both parties agree that settlement is less risky, expensive, and time-consuming, and more efficient. (#52 and #61-1).

      The court finds that as a class action could potentially be very expensive, risky, and lengthy, the second factor in *City of Seattle* weighs in favor of granting final approval of the settlement. *See City of Seattle*, 955 F.2d at 1291; *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (listing similar reasons for approving settlement of class action).

          **iii.**        **Risk of Maintaining Class Action Status**

      Plaintiff states that she is confident that she will prevail on her motion to certify class, but that there is "still a very realistic possibility that her motion would fail." (#61-1). Plaintiff also asserts that she is not yet aware of the possible challenges that defendant would present to class certification, and

that settlement eliminates any risk of having to defend a contested motion to certify class.  *Id.*  Defendant agrees that "settlement avoids the need for a contested class certification motion that would be time consuming and costly for all partes," and states that if the settlement is not approved, defendant is "free to challenge class certification for any reason."  (#52).  Defendant asserts that Rule 23's "substantive hurdles stand in the way of non-settlement class certification," but that settlement "eliminates all uncertainty and gives class members a substantial payment without the burden of establishing that the class is certifiable and without proving meritorious claims."  *Id.*

The parties agree that there is a risk that the class certification motion could be denied, which would result in numerous individual litigations commencing against the defendant.  (#52 and #61-1).  In light of this risk, the court find that this factor weighs in favor of granting final approval of the settlement.  *See City of Seattle*, 955 F.2d at 1291.

### iv.  Amount Offered in Settlement

Pursuant to the settlement agreement, each class member will receive $1,000 from defendant in exchange for the release of claims.  (#51 Exhibit 1).  Plaintiff states that the class "includes individuals with difficult (if not impossible) to prove claims," and that the settlement offers $1,000 relief to those members despite this "potential shortcoming."  (#61-1).  In addition to this, the plaintiff and class members need not take any action to collect the $1,000.  *Id.*  The $1,000 will simply be mailed to the class members' last known address.  *Id.*  The $1,000 is "of great value" to the class members, plaintiff states, as the relief comes without regard to actual damages, which most members did not suffer.  *Id.*  Defendant asserts that the $1,000 is fair, because it provides "direct and automatic monetary relief" in an amount equal to the statutory maximum, without regard to actual damages or merits of members' claims.  (#52).  Defendant states that class members include individuals "for whom [defendant] may have followed the mandates of the FCRA but for whom [defendant] could not easily and cost-effectively

verify such compliance..."  *Id.*  Defendant states that in order to verify such compliance, it would have to incur additional expenses, which are eliminated by the settlement.  *Id.*

As the parties represent that the $1,000 is the statutory maximum[1], that the members would receive this amount without taking any action, and that the amount is without regard for actual damages or the merits of individual members' claims, the court finds that this amount is reasonable. *See City of Seattle*, 955 F.2d at 1276; *Hanlon*, 150 F.3d at 1027.  This factor weighs in favor of granting final approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

### v.     Extent of Discovery Completed and Stage of Proceedings

As stated in the "Relevant Facts" section above, plaintiff obtained more than 1,650 pages of documents confirming class size and deposed Mr. Todes, who confirmed the validity of the documents and provided testimony regarding the compliance with FCRA.  (#61-1).  The documents and testimony both yield 47 class members, and plaintiff asserts that further discovery would not result in a higher number.  *Id.*  Settlement is appropriate for the 47 individuals, plaintiff asserts, and no additional discovery is needed.  *Id.*  Defendant states that it provided plaintiff with adequate discovery as described by plaintiff, as well as summaries of its FCRA compliance procedures.  (#52).  Through this discovery, 47 job applicants were identified as potential class members.  *Id.*  Defendant asserts that settlement of these 47 class members' claims is fair, reasonable, and supported by the discovery conducted by the parties.  *Id.*

The court finds that the parties have conducted adequate discovery to support their agreement to settle the plaintiff and the class members' claims, and that the decision to do so is reasonable.  *See City of Seattle*, 955 F.2d at 1276; *Hanlon*, 150 F.3d at 1027.  This factor weighs in favor of granting final approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

. . .

. . .

---

[1] The parties dispute whether the $1,000 maximum statutory recovery is per claim or per consumer.  (#52).

### vi.   Experience and Views of Counsel

Lead plaintiff's counsel is "a nationally recognized class action practitioner who has acted in a lead role in dozens of nationwide class actions involving consumer protection and the FCRA." (#61-1). Counsel has been an integral part of many settlements of this nature, and, "in his estimation," this settlement is "an excellent result because it provides [c]lass [m]embers with genuine relief as quickly as possible." *Id.* Defense counsel did not submit an affidavit to the court or present in its response a statement regarding counsel's experience and views. (#52). Defense counsel did prepare and sign the response to plaintiff's motion for preliminary approval, and stated therein that the proposed settlement terms "are fair, adequate and reasonable, and that the [c]ourt should preliminarily approve the [s]ettlement [a]greement." *Id.*

Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement is fair, reasonable, and adequate, the court finds that this factor weighs in favor of granting final approval of the settlement. *See City of Seattle*, 955 F.2d at 1291.

### vii.   Reaction of the Class Members to the Proposed Settlement

Pursuant to this court's order, the class members had until October 15, 2012, to object to any part of the settlement and until November 7, 2012, to exclude themselves from the settlement. (#57). Plaintiff asserts that none of the class members have objected or opted out of the settlement, and that only eight members were unable to be reached[2]. (#61-1). The court finds that since there were no objections or opt-outs and 83% of the class members will receive the settlement amount, this factor weighs in favor of granting final approval of the settlement. *See City of Seattle*, 955 F.2d at 1291; *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (stating that "[i]t is

---

[2] Courts have recognized that due process does not require that absent class members receive actual notice of a class action settlement. *Moralez v. Whole Foods Market, Inc.*, __ F. Supp. 2d __, No. C 12–01072 CRB, 2012 WL 4369603, at *11 (N.D. Cal. Sept. 24, 2012) ("Due process does not require that a class member actually receive notice, so long as the notice afforded was 'the best notice practicable under the circumstances.'").

established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members," and that "[t]he absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (finding favorable class reactions in a 6.9% response rate—1800 proofs of claim out of 26,000 notices sent—and a 9% response rate—37,000 proofs of claim out of over 400,000 notices sent).

### 2.  Requirements of Rule 23 Are Satisfied

Pursuant to MANUAL § 21.635, the court must also make "specific findings as to how the settlement meets or fails to meet the statutory requirements" under Fed. R. Civ. P. 23.  Pursuant to Rule 23(a), the court may grant class status where plaintiff demonstrates that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  The action must also meet one of the prerequisites of Rule 23(b) to be maintained as a class action.  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163 (1974).  In this action, plaintiff seeks class certification based on Rule (b)(3), which states that class certification will be granted if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  (#61-1); Fed. R. Civ. P. 23(b)(3).

### a.  Rule 23(a)

For the court to certify a class under Fed. R. Civ. P. 23(a), the court must find that the requirements of numerosity, commonality, typicality, and adequacy of representation are met.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Defendant asserts that the parties have

"stipulated, for settlement purposes only, to certification of the class as defined in [p]laintiff's [o]riginal [c]lass [a]ction [c]omplaint and [m]otion." (#52). In light of this stipulation, the court will only briefly address certification of the class under Rule 23(a).

As stated by the parties, there were 47 proposed class members. (#48, #52, and #61-1). The court finds that the numerosity requirement is satisfied. *Hanlon*, 150 F.3d at 1019; *See Equal Employment Opportunity Comm'n v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. April 19, 2007) ("[c]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.") (*citing Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998)); *see Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (upholding class of 20); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (upholding class of 18).

Plaintiff asserts that commonality is "easily satisfied," as common questions include "(1) whether [defendant] provides applicants or employees with a copy of their consumer report and summary of FCRA rights before taking an adverse action against them; (2) whether [defendant] has a system in place to ensure compliance with these requirements of the FCRA; (3) whether [defendant] willfully adopted that system or willfully violated consumers' FCRA rights; and (4) whether [defendant] is liable for damages, and the amount of those damages." (#61-1). Upon a review of the allegations in the complaint (#1) and the discovery conducted thus far (#61-1), the court finds that plaintiff has satisfied the commonality requirement. *See Hanlon*, 150 F.3d at1019; *See Santoro v. Aaron Agency, Inc.*, 252 F.R.D. 675, 680 (D. Nev. 2008) (holding that "one significant issue common to the class may be sufficient to warrant certification."); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 520 (C.D. Cal. 2011).

Plaintiff states that her claims are typical of those of the class, as plaintiff and the class members (1) have "precisely the same claims," (2) must satisfy the same elements of each of the claims, (3) assert

claims that are based upon the same course of conduct, and (4) have been injured in the same manner by this conduct.  (#61-1).  The court finds that, based on the claims alleged in the complaint (#1) and plaintiff's assertions in the instant motion (#61-1), plaintiff has satisfied the typicality requirement.  *See Hanlon*, 150 F.3d at1019; *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (stating that "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct."); *see also Galvan v. KDI Distrib. Inc.*, No. SACV 08–0999–JVS (ANx), 2011 WL 5116585, at *7 (C.D. Cal. Oct. 25, 2011) (finding typicality satisfied where named plaintiff's "claims and potential remedies are the same as the absent class members").

The adequacy of representation requirement is satisfied if: (1) plaintiff is represented by qualified and competent counsel; and (2) plaintiff's interests do not conflict with the interests of the proposed class members. *See Staton*, 327 F.3d at 957; *see also In re Canseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010).  Plaintiff's counsel has demonstrated to the court that counsel is qualified and competent in litigating complex class action, including consumer and FCRA actions.  (#61-1).  Plaintiff states that her claims are "co-extensive with those of" the settlement class, and that there is no conflict between plaintiff's interests and those of the class.  *Id.*  The court finds that the final requirement of adequate representation is satisfied.  *See Hanlon*, 150 F.3d at1019; *See also Staton*, 327 F.3d at 957; *In re Canseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. at 531.

### b.      Rule 23(b)(3)

Plaintiff asserts that the class is ideal for certification under Rule 23(b)(3), which allows certification of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

18

superior to other available methods for fairly and efficiently adjudicating the controversy." (#61-1); Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Certification under Rule 23(b)(3) identifies "those actions in which certification of a class would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Olson*, 2007 WL 2703053 at *5.

As discussed above, plaintiff and the class members present predominately the same common questions of law or fact, including whether defendant wilfully failed to follow the FCRA when it took adverse actions against plaintiff and class members. (#61-1). Plaintiff asserts that "[p]articularly in the settlement context, class treatment is superior to multiple individual suits or piecemeal litigation of nearly identical claims because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication." *Id* (citing *Nguyen v. Baxter Healthcare Corp.,* 275 F.R.D. 596, 603–04 (C.D. Cal. 2011) (finding superiority requirement met where the common characteristics of the claims and evidence did not present "significant suit management difficulties")). The court finds that Rule 23(b)(3) is satisfied. Fed. R. Civ. P. 23(b)(3).

As all of the requirements of class certification are met and the parties have stipulated to class certification for purposes of the settlement, the court finds that the class certification is appropriate. Fed. R. Civ. P. 23(a) and (b)(3).

### 3.    Notice Program

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of

whether the class was certified under Rule 23(b)(1), (b)(2) , or (b)(3)."  MANUAL § 21.312.  Plaintiff attached the proposed form of notice of the settlement to the settlement agreement (#51-2 Exhibit A) and the court specifically ordered the manner in which the notices were to be distributed (#57).  The court found that the notice (#51-2 Exhibit A) complies with the requirements outlined in section 21.312 of the MANUAL, and is practicable notice under these circumstances.  (#53 and #54).  Plaintiff represents to the court that counsel followed the notice procedure outlined by the court (#57), and that only eight class members were unable to be reached.  (#61-1).  As discussed above, these notices were direct, reasonable, and were the best notice practicable under the circumstances.  MANUAL §§ 21.312 and 21.632; Fed. R. Civ. P. 23(e)(1)(B).

### 4.    Requested Incentive Award, Counsel's Attorneys' Fees, and Counsel's Expenses

Plaintiff asks this court to "approve the proposed [c]lass [r]epresentative incentive award, [p]laintiff's [c]ounsel's reasonable attorneys' fees, and [p]laintiff's [c]ounsel's requested costs and expenses reasonably incurred in prosecuting this case."  (#61-1).

### a.    Plaintiff Harris' Incentive Award

"Incentive awards are fairly typical in class actions" and are intended to "'compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action and, sometimes, to recognize their willingness to act as a private attorney general.'"  *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) (citing *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 958–59 (9th Cir. 2009)).  As the court held in its R&R (#53), an incentive award is appropriate in this action.  Under the settlement agreement, Plaintiff "Harris will be paid an incentive award of $1,500 in recognition of her service and effort on behalf of the class. This incentive award is in addition to the relief to which Harris will be entitled as a member of the settlement class under the terms of the settlement agreement."  (#51 Exhibit 1).  Plaintiff argues that she "spent a

considerable time reviewing correspondence and documents in this case," and that she decided to serve as the named plaintiff in this action after counsel explained the responsibilities required of her.  (#50 and #61-1).  The court finds that the incentive award of $1,500 is appropriate and should be awarded to plaintiff Harris.  *See Hartless v. Clorox Co.*, 273 F.R.D. at 646; *Rodriguez*, 563 F.3d at 958–59.

### b.    Plaintiff's Counsel's Attorneys' Fees and Expenses

The parties agreed that plaintiff's counsel would receive attorneys' fees totaling $85,977.50. (#50 Exhibit 1).  Plaintiff asserts that these fees are to be separately paid by defendants and that the award will not decrease the relief that will be paid to the class members.  (#61-1).  The accumulated lodestar for the case is approximately $93,840.00, and plaintiff states that the award requested in less than the lodestar.  *Id.*

The court has broad discretion in awarding attorneys' fees in class actions and must consider several factors before awarding such fees.  *Lobatz v. U.S. W. Cellular of Calif., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000); *Fischel v. Equitable Life Assurance Soc'y of the United States*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002).  These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Fischel,* 307 F.3d at 1007 n.7.

Counsel states that the total hours spent on this case is approximately 206, and that the billing rates range from $425 to $750 per hour.  (#61-1).  Plaintiff asserts that the *Fischel* factors weigh in favor of awarding the fees, as (a) "[w]hile the issues presented are not particularly novel, [p]laintiff still faced

an uphill battle because all of [her] claims depend upon a finding that [defendant] willfully, as opposed to merely negligently, violated the FCRA," (b) counsel "reviewed 1,650 pages of informal discovery, including detailed summaries of USPT's FCRA-compliance procedures," (c) "although the case settled at an early stage of litigation, effort was still required to confirm the settlement and establish that it was, in [c]ounsel's opinion, fair, reasonable, and adequate for [c]lass [m]embers," (d) "[t]aking this case prevented [p]laintiff's [c]ounsel from taking other work," (e) counsel's requested fee is eminently reasonable and counsel is not requesting an enhanced fee, even though the fee was contingent, (f) "results obtained are excellent in light of (1) the need for [p]laintiff to prove willful violations to obtain any monetary relief at all and (2) the ability of [c]lass [m]embers to receive a large cash payment without regard to actual damages they may have suffered," (g) "[p]laintiff's [c]ounsel, a nationally recognized class action practitioner, brought its significant, specialized reputation and skill to bear in this case," (h) "[c]lass [m]embers' positive reaction to the [s]ettlement further supports the granting of [c]ounsel's fee request" and "[t]he [p]arties are unaware of any objections to any portion of the [s]ettlement, including the requested attorneys' fees, and (I) "[t]he lodestar that [c]ounsel accumulated is reasonable and necessary, and is based upon hourly rates that are customary to class-action practitioners with nationwide practices." *Id.*   The court finds that the attorneys' fees  agreed to by the parties in the amount of $85,977.50 should be awarded.  *See Fischel,* 307 F.3d at 1007 n.7.

Plaintiff also asserts that counsel's expenses should be awarded, as they are reasonable, include "items typically associated with litigation—photocopies, faxes, legal research, staff overtime, a deposition, and the cost of notice administration," and were "necessary and incurred in pursuit of this lawsuit with an eye toward minimizing costs." *Id.*  As the court stated during the hearing, and upon agreement of the parties, class counsel's reasonable expenses calculated after the completion of the mailing of the [s]ettlement payments to class members must not exceed $4,000.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that plaintiff Weltonia Harris' Motion for Final Approval of Class Action Settlement and Related Orders (#61) be GRANTED.

IT IS FURTHER RECOMMENDED that the court:

(1) Certify a class consisting of the 47 class members proposed by plaintiff;

(2) Approve the Settlement Agreement;

(3) Direct the Class Counsel to implement the settlement by mailing the settlement checks to the class members in accordance with the Settlement Agreement;

(4) Order that if any funds remain uncollected after one year from the date of the court's order on this recommendation, the plaintiff file a motion for further disposition of the remaining funds to charity through *cy pres* proposal;

(5) Order defendants to pay Class Counsel the sum of $85,977.50 for reasonable and necessary attorneys' fees and the sum of Class Counsel's reasonable expenses, not to exceed $4,000, to be calculated after the completion of the mailing of the Settlement payments to Class Members;

(6) Order defendants to pay Plaintiff Harris the sum of $1,500.00; and

(7) Dismiss all claims asserted by plaintiff Harris and the Class with prejudice.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and

brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 26th day of December, 2012.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE